UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRY PEAKE, individually and on behalf of others similarly situated,<br><br>                                      Plaintiffs,<br>v.<br>CITY OF CORONADO,<br>                                      Defendant. | Case No.: 21-cv-00820-AJB-KSC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR APPROVAL OF FLSA SETTLEMENT**<br><br>**(Doc. No. 18)** |

      Presently pending before the Court is the Motion for Approval of the Settlement Agreement between Plaintiff Perry Peake, on behalf of himself and similarly situated individuals who have consented to join the instant action ("Plaintiffs"), and Defendant City of Coronado ("Defendant" or "City") (collectively, "the Parties"). (Doc. No. 18.) Pursuant to Civil Local Rule 7.1.d.1, the Court finds the instant matter suitable for determination on the papers and without oral argument. For the reasons discussed below, the Court **GRANTS** the Motion to Approve the Settlement Agreement.

**I.    BACKGROUND**

      This case involves an unpaid overtime collective action, wherein Plaintiffs are non-exempt employees of the City of Coronado's Fire Department who argue they are entitled to compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and seek unpaid overtime compensation, liquidated damages, and reasonable attorneys'

1

fees. (Complaint ("Compl."), Doc. No. 1, ¶ 1.) Plaintiffs filed the Complaint on April 27, 2021. (*See generally* Compl.) They allege the City violated the FLSA by failing to pay compensation for overtime hours worked at the rate of 1.5 times the regular rate of pay. (*Id.* ¶ 2.)

On October 25, 2021, the Parties filed a notice of settlement. (*See* Doc. No. 15.) The Settlement provides Defendant will pay $196,000 to Plaintiffs as the total amount of unpaid overtime owed and liquidated damages, apportioned as follows: Plaintiff Peake will receive an individual settlement payment of $51,433.26 for owed unpaid wages and a second check totaling $51,433.26 for liquidated damages and all other damages or relief recoverable; Plaintiff Summers will receive $27,314.74 for owed unpaid wages and a second check totaling $27,314.74; and Plaintiff Scarboro will receive $19,252.00 for owed unpaid wages and a second check totaling $19,252.00. (Doc. No. 18-1 at 10.) Defendant will additionally pay reasonable attorney fees, not to exceed a total of $45,000. (*Id.* at 11.) Plaintiffs agree to release Defendant from all overtime compensation claims against Defendant under the FLSA that may exist or have existed as of and including the effective date of the Settlement Agreement with prejudice. (*Id.* at 11–12.)

## II.   LEGAL STANDARD

The FLSA was enacted to protect covered workers from substandard wages and oppressive working hours. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981); 29 U.S.C. § 202(a) (characterizing substandard wages as a labor condition that undermines "the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers"). "The FLSA places strict limits on an employee's ability to waive claims for unpaid wages or overtime . . . for fear that employers may coerce employees into settlement and waiver." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (citing *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 175 (S.D. N.Y. 2015)) (internal quotation marks and citation omitted). FLSA claims for unpaid wages "may only be waived or otherwise settled if the settlement is supervised by the Secretary of Labor or approved by a district court." *Id.* (citing *Lynn's*

*Food Stores, Inc. v. United States ex rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1352–53 (11th Cir. 1982)); *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012) (same).

In reviewing a FLSA settlement, a district court must determine whether the settlement represents a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores*, 679 F.2d at 1355. A bona fide dispute exists when there are legitimate questions about "the existence and extent of Defendant's FLSA liability." *Ambrosino v. Home Depot. U.S.A., Inc.*, No. 11cv1319 L(MDD), 2014 WL 1671489, at *1 (S.D. Cal. Apr. 28, 2014). There must be "some doubt . . . that the plaintiffs would succeed on the merits through litigation of their [FLSA] claims." *Selk*, 159 F. Supp. 3d at 1172 (quoting *Collins v. Sanderson Farms*, F. Supp. 2d 714, 719–20 (E.D. La. 2008)) (internal quotations omitted).

After a district court is satisfied that a bona fide dispute exists, it must then determine whether the settlement is fair and reasonable. *Id.* To determine this, courts in this circuit look to the totality of the circumstances, balancing such factors as: "(l) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion." *Id.* at 1173. A court will not approve a settlement of an action in which parties attempt to settle for less than the FLSA-guaranteed amount because it would shield employers from the full cost of complying with the statute. *Id.* at 1172. The Court addresses each of these factors in turn.

## III. DISCUSSION

### A. Bona Fide Dispute

The Court finds this case reflects a bona fide dispute between the Parties over potential liability under the FLSA. Specifically, the Parties point to three disputes: (1) whether the City is liable under the United States Department of Labor's "First Responder Regulation," 29 C.F.R. § 541.3(b); (2) whether the City is liable for liquidated damages; and (3) whether the FLSA's two-year or three-year statute of limitations should

be applied. (Doc. No. 18 at 5–6.) These issues raise legitimate questions over whether the City may be liable under the statute, particularly given the "inconsistent and intensely factually driven" application of the First Responder Regulation to battalion chiefs. (*Id.*) In light of these contending views on issues central to the case, and the fact that Plaintiffs are not clearly entitled to the compensation they seek, the Court concludes there is a bona fide dispute between the Parties. *See Selk*, 159 F. Supp. 3d at 1172.

## B. Fair and Reasonable Resolution

The Parties contend the proposed Settlement Agreement is a fair and reasonable resolution of the Parties' disputes and in furtherance of the purposes of the FLSA. After considering the six factors outlined above, the Court finds the Settlement Agreement is fair and reasonable under the FLSA.

### 1. Plaintiff's Range of Possible Recovery

In comparing the amount proposed in the settlement with the amount that plaintiffs could have obtained at trial, the court must be satisfied that the amount left on the settlement table is fair and reasonable under the circumstances presented. *Selk*, 159 F. Supp. 3d at 1174. The Court must consider whether the range of potential recovery bears some reasonable relationship to the true settlement value of the claims. *Id.* "[A] proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

Here, the range of Plaintiffs' potential recovery varies widely depending upon how the bona fide disputes between the Parties are resolved. If Plaintiffs prevailed on the issue of liability, the City's liability would depend upon whether the City was liable for liquidated damages and whether the two- or three-year statute of limitations applied. (Doc. No. 18 at 7.) If the City prevailed as to the issue of liquidated damages and the two-year statute of limitations applied, Plaintiffs would be awarded $99,261.78. (*Id.*) If Plaintiffs prevailed as to liquidated damages and the two-year statute of limitations applied, Plaintiffs would be awarded $198,523.56. (*Id.*) Finally, if Plaintiffs prevailed on both the issue of

liquidated damages and the applicability of the three-year statute of limitations, Plaintiffs would be awarded $258,428.36. (*Id.*) The settlement amount of $196,000 thus represents approximately 75.8% of the maximum recovery possible, and approximately double the amount recoverable were the City's approach to prevail. (*Id.* at 8.)

The Court agrees the amount set forth in the Settlement Agreement bears a reasonable relationship to the true settlement value of the claims. Other courts have approved settlements accounting for a similar percentage of the total possible recovery. *Cf. Selk*, 159. F. Supp. 3d at 1175 (approving settlement representing 26–50% of maximum recovery); *Jones v. Agilysys, Inc.*, No. C 12-03516 SBA, 2014 WL 2090034, at *2 (N.D. Cal. May 19, 2014) (approving settlement fund representing between 30% to 60% of best possible recovery). Given there are several bona fide disputes in this case, a number of variables could lead Plaintiffs to recover significantly less than the proposed settlement amount should the case proceed to trial. Accordingly, the Court finds the proposed settlement amount is appropriately within the range of possible recovery by Plaintiffs.

## 2. Stage of Proceedings and Amount of Discovery Completed

"The Court assesses the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement." *Selk*, 159 F. Supp. 3d at 1177. As long as the parties have "sufficient information to make an informed decision about settlement," this factor will weigh in favor of approval. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the Parties did not engage in formal discovery. However, they exchanged information and analyzed Plaintiffs' payroll data and explanations as to how the City's payroll system works. (Cunningham Declaration ("Decl."), Doc. No. 18-1, ¶¶ 20–21.) The Parties further agreed the City's expert, Nicholas Briscoe, would calculate the damages, and thereafter Plaintiffs would have Mr. Briscoe's calculations reviewed by Plaintiffs' retained expert. (*Id.* ¶ 18.) The Parties state their "cooperative exchange of information produced both the majority and the most important of the information that would have been sought in formal discovery[.]" (Doc. No. 18 at 9.)

5

Given the information exchanged between the Parties and the attorneys' research on Plaintiffs' claims, the Court finds the Parties have "sufficient information" to reach an informed decision. *Linney*, 151 F.3d at 1239. Accordingly, this factor favors approval of the Settlement Agreement.

### 3. Seriousness of Litigation Risk

The Court finds the seriousness of the litigation risks also weighs in favor of approval of the Settlement Agreement. Settlement is favored where there is "a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015). If a settlement in an FLSA lawsuit "reflects a reasonable compromise over issues that are actually in dispute, then the court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Selk*, 159 F. Supp. 3d at 1173 (internal citations and quotations omitted); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014); *Lynn's Food Stores*, 679 F.2d at 1353 n.8 (requiring "settlement of a bona fide dispute between the parties with respect to coverage or amount due under the [FLSA]").

As Plaintiffs note, there are a number of bona fide disputes in this case that represent litigation risks for Plaintiffs. The resolution of even one such dispute, "particularly over the methodology used to calculate damages," in the City's favor would result in Plaintiffs recovering significantly less at trial than they would receive through settlement. (Doc. No. 18 at 9.) Considering the above-referenced uncertainty, the Court finds the Parties would face substantial litigation risk were this action to continue. Further, "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009). Accordingly, this factor supports approval of the Settlement Agreement.

### 4. Scope of Release Provision in the Settlement Agreement

"Courts review the scope of any release provision in a FLSA settlement to ensure that class members are not pressured into forfeiting claims, or waiving rights, unrelated to

the litigation." *Selk,* 159 F. Supp. 3d at 1178. Generally, "a release provision that tracks a plaintiff's wage and hour claims without requiring the plaintiff to waive unrelated claims tips in favor of approval." *Roberts v. City of Chula Vista,* No. 16cv1955-MMA (DHB), 2017 WL 6541105, at *5 (S.D. Cal. Dec. 21, 2017). Here, the release provision contained in the Settlement Agreement is limited to Plaintiffs' wage-and-hour and overtime claims. (Doc. No. 18 at 9–10.) Plaintiffs agree to "fully, finally and forever release[] Defendant City of Coronado . . . from all 'Released Claims[.]'" (Doc. No. 18-1 at 11.) "'Released Claims' shall mean any and all wage-and-hour and overtime pay-related claims under the Fair Labor Standards Act, California law, or tort or contract theories, which accrued or could have accrued through the Effective Date of this Agreement[.]" (*Id.* at 12.)

In reviewing the scope of the release provision contained in the Parties' Settlement Agreement, the Court is satisfied that the release provision is limited in scope and "does not force class members to forfeit unrelated claims." *Selk,* 159 F. Supp. 3d at 1179. Accordingly, this factor weighs in favor of approval of the Settlement Agreement.

### 5. Experience of Counsel

"The opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11-cv-5188-WHO, 2014 WL 3404531, at *5 (N.D. Cal. Jul. 11, 2014). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)) (internal quotations omitted).

Plaintiffs' counsel each have decades of practice in labor and employment matters. Attorney James Cunningham has years of experience representing public safety employees, represents the San Diego Firefighters Association—the labor organization representing the City's firefighters, and has lectured throughout California. (Cunningham Decl. ¶¶ 3–8.) Attorney Will Aitchison has extensive experience handling FLSA collective actions, has performed many audits of employer payroll practices for FLSA compliance,

and has authored several books and presented at seminars on the subject. (Aitchison Decl., Doc. No. 18-2, ¶¶ 10–15.) Both attorneys opine that the Settlement Agreement is fair and reasonable. (Cunningham Decl. ¶ 28; Aitchison Decl. ¶ 31.) Finally, "there is nothing in the record that calls into question the experience of counsel or raises doubt about counsel's judgment." *Selk*, 159 F. Supp. 3d at 1176. Thus, the Court finds this factor weighs in favor of approval of the Settlement Agreement.

### 6. Possibility of Fraud or Collusion

The Court finds no evidence that the Settlement resulted from, or was influenced by, fraud or collusion. "A key factor supporting this finding is that the amount of the individual settlement payments to be received by opt-in members is based on an analysis of employee time records[.]" *Selk*, 159 F. Supp. 3d at 1179. "This approach guards against the arbitrariness that might suggest collusion." *Id.* Here, the Parties' Settlement does not involve a lump sum of money to be divided on an arbitrary basis by all plaintiffs but instead, the size of each Plaintiff's recovery has been calculated based on their time records and payroll data, taking into account each Plaintiff's compensation, work hours, and FLSA overtime. (Doc. No. 18 at 11.) Additionally, the record in this case shows the Settlement was the result of arms-length negotiations: the Parties' counsel have conducted two lengthy in-person settlement conferences with Magistrate Judge Karen S. Crawford, in August and September 2021. (*See* Doc. Nos. 11, 12.) Accordingly, the Court finds there is no evidence that fraud or collusion exists.

### C. Attorney's Fees

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180 (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D. N.Y. 2012)). Where a settlement produces a common fund for the benefit of the plaintiffs, courts may employ the lodestar or percentage-of-recovery method to determine the reasonableness of the requested fee award. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). However, where the recovery is separate from a common fund, courts

8

typically employ the lodestar method. *See Banks v. Pyramid Consulting, Inc.*, No. 3:18-cv-00078-H-JLB, 2019 WL 338493, at *4 (S.D. Cal. Jan. 28, 2019). Here, Plaintiffs' counsel notes his fees are "to be paid in addition to the $196,000 paid to Plaintiffs and not as part of the settlement corpus." (Doc. No. 18 at 12.) As such, the Court utilizes the lodestar method in determining whether Messrs. Cunningham and Aitchison's requested fees and costs are reasonable.

Under the lodestar method, courts multiply "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgepoint Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (internal citations and quotations omitted). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Id.* (internal citations and quotations omitted).

Plaintiffs' counsel seeks $45,000 in attorneys' fees. (Doc. No. 18 at 12.) This is significantly less than the amount that would be awarded under the lodestar method. Plaintiffs claim the following amount would be awarded under the lodestar method:

| Name | Position | Hours | Rate | Total |
| --- | --- | --- | --- | --- |
| Aitchison, W. | Partner | 33.1 | $750 | $24,825 |
| Cunningham, J. | Partner | 73 | $500 | $36,500 |
| Salamony, J. | Paralegal | 21.7 | $125 | $2,712.50 |
| **Total** | | | | $64,037.50 |

The Court first considers whether these hourly rates are reasonable, then considers whether the hours are reasonable, and finally compares the requested award to the lodestar amount.

### 1. Reasonable Hourly Rate

First, the Court must determine whether the hourly rate requested is reasonable. "Fee applicants have the burden of producing evidence that their requested fees are in line with those prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience, and reputation." *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1110–11 (9th Cir. 2014) (internal citations and quotations omitted). To determine the prevailing market rates, courts should consider "the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Davis v. City & Cnty. of S.F.*, 976 F.2d 1536, 1545 (9th Cir. 1992), *opinion vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993). The Court should further consider affidavits of the prevailing counsel and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, especially those setting a rate for the prevailing counsel. *Ravet v. Stern*, No. 07CV31 JLS (CAB), 2010 WL 3076290, at *2 (S.D. Cal. Aug. 6, 2010). The relevant legal community is "the forum in which the district court sits." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205–06 (9th Cir. 2013) (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)).

Here, Mr. Cunningham has been practicing law for 34 years and has focused his practice almost exclusively on public safety employees—namely police officers and firefighters. (Doc. No. 18 at 12; Cunningham Decl. ¶ 3.) Moreover, Mr. Cunningham has litigated cases in front of the Southern and Central District of California, the Third and Fourth District Courts of Appeals of California, and has presented oral argument at the California Supreme Court. (Cunningham Decl. ¶ 7.) Mr. Cunningham seeks an hourly rate of $500 per hour here. (Doc. No. 18 at 12.)

Next, Mr. Aitchison has been practicing law for 44 years and began representing public sector employees in FLSA collective actions in 1987. (Aitchison Decl. ¶ 10.) Mr. Aitchison has significant experience in class and collective action cases. (*Id.* ¶¶ 10–12.) Further, Mr. Aitchison has litigated FLSA collective actions in federal courts in Alaska, Washington, Oregon, California, Hawaii, Arizona, Colorado, Nebraska, Texas, New Mexico, Tennessee, and New York. (*Id.* ¶ 11.) Mr. Aitchison seeks an hourly rate of $750 per hour here. (Doc. No. 18 at 12.)

///

Lastly, Jaclyn Salamony has been a paralegal for 3 years and seeks an hourly rate of $125 per hour. (*Id.*)

In considering Mr. Cunningham, Mr. Aitchison, and Ms. Salamony's backgrounds, relevant experience in this area of law, and the Court's knowledge and experience of customary rates concerning reasonable and proper fees, the Court finds the requested hourly rates are reasonable. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011); *Roberts*, 2017 WL 6541105, at *7.

### 2. Reasonable Hours Expended

Next, the Court must determine whether the number of hours expended by counsel on this litigation was reasonable. "A reasonable number of hours is equal to the number of hours that the attorney could reasonably bill to a private client." *Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *7 (N.D. Cal. June 22, 2017) (citing *Gonzalez*, 729 F.3d at 1202). "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwin v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Here, Mr. Cunningham states he spent 73 hours working on this case, while Mr. Aitchison spent 33.1 hours, and Paralegal Jaclyn Salamony spent 21.7 hours working. (Cunningham Decl. ¶ 32; Aitchison Decl. ¶ 35.) The Court has reviewed these time sheets and they do not display "excessive, redundant or otherwise unnecessary" billed hours. *Van Gerwin*, 214 F.3d at 1045. Moreover, the Court finds the hours to be reasonably expended, given that the parties engaged in informal settlement discussions for several months, were required to review complex payroll and timekeeping data and spreadsheets, and reached settlement "after an extensive process of negotiations between Plaintiffs and the City with respect to the calculation of potential damages." (Cunningham Decl. ¶ 17.)

### 3. Lodestar Figure

In light of the parties' submissions, the Court concludes the requested amount of fees ($45,000) is reasonable given the circumstances of this case. The reasonableness of

the fee award is primarily reinforced by the fact that for these two attorneys and their paralegal, the lodestar figure totals $64,037.50—roughly one-third more than the amount requested. Moreover, each plaintiff approved this amount when they signed the settlement agreement. (*See* Doc. No. 18-1 at 11.) Accordingly, because the attorneys request less than the presumptively reasonable lodestar figure, and considering the diligent efforts of the Parties in this case, the Court finds the requested amount of fees totaling $45,000 to be reasonable, and awards the amount requested.

## IV.   CONCLUSION

Based on the foregoing, the Court finds the Settlement Agreement is a fair and reasonable resolution of a bona fide dispute. As such, the Court **GRANTS** the Plaintiffs' motion for approval of settlement. The Court further **APPROVES** the payment of $45,000 in attorneys' fees to Public Safety Labor Group and the Law Offices of James J. Cunningham A.P.C., and **DISMISSES** this action in its entirety with prejudice. The Court retains jurisdiction over this matter for the purpose of enforcing the settlement agreement.

**IT IS SO ORDERED.**

Dated:  December 27, 2021

Hon. Anthony J. Battaglia
United States District Judge